## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR116 |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | **and** |
| ALLEN COTTON, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the court on the motions of defendant Allen Cotton (Cotton) to sever (Filing No. 46) and to suppress (Filing No. 49 - Sealed).[1] Cotton is charged in an Indictment in Count I with co-defendants Clinton Brooks, Jr. (Brooks), Robert McFarland (McFarland), and Mark Rex (Rex) with a conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. Cotton, Brooks, and Rex are charged in Counts II - IV, respectively, with false and fraudulent use of a Social Security account number in violation of 42 U.S.C. § 408(a)(7)(B). In Counts V - VII, Cotton, Brooks, and Rex are charged with committing bank fraud in violation of 18 U.S.C. § 1344. Cotton, Brooks, Rex, and McFarland are charged in Counts VIII - XI, respectively, with using the identification of another to commit a felony in violation of 18 U.S.C. § 1028A.

Cotton seeks to sever his trial from that of his co-defendant, Rex. Further, Cotton seeks to suppress any evidence seized as a result of the following search warrants: a November 19, 2004 search warrant for a 1992 red Cadillac DeVille issued by a district judge in Sarpy County, Nebraska; a November 9, 2004 search warrant for a 1984 yellow Cadillac El Dorado issued by a district judge in Sarpy County, Nebraska; and a search warrant for a residence at 6613 South 139th Circle, Omaha, Nebraska, issued by a county judge in Douglas County, Nebraska. Further, Cotton seeks to suppress evidence seized from a

---

[1] The motion to suppress was filed as sealed due to various information which should not be made public due to the E-Government Act such as addresses, social security number, dates of birth, names of minor children, and financial account information. **See** Filing Nos. 45 and 48.

vehicle which was searched after a traffic stop and impoundment by the Omaha Police Department in Omaha, Nebraska, on December 6, 2004. Cotton also seeks to suppress any statements he made to law enforcement officers after his arrest on February 5, 2005.[2]

Cotton further requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), alleging material false and misleading statements were made by the affiants in the search warrants obtained in this case. The government did not respond to the motions. Upon a review of the showing made by Cotton, the court found Cotton made a substantial preliminary showing that he was is entitled to a *Franks v. Delaware* hearing (Filing No. 53) and scheduled an evidentiary hearing on the motions to suppress and the motion to sever.

Evidentiary hearings were held on the motions on July 13 and 26, 2005. At the hearings, the court heard testimony from United States Postal Inspector Perry Edward Mitchell (Inspector Mitchell) with the Postal Inspection Service (USPIS), Evelyn M.A. Yah (Ms. Yah), Sergeant Don Voss (Sergeant Voss) of the Sarpy County Sheriff's Office (SCSO), Officer Dean Miller (Officer Miller) of the Omaha Police Department (OPD), and Special Agent Jason Albers (Agent Albers) with the Inspector General's Office for the Social Security Administration. The court also received into evidence the following exhibits: Exhibit 1 - Albers Notes; Exhibit 2 - Mark Rex Interview; Exhibit 3 - Audiotape of Mark Rex Interview; Exhibit 4 - Audiotape of Mark Rex Interview - Side A only; Exhibit 5 - Videotape 2 of Mark Rex Interview; Exhibit 6 - Frederick Franklin letter; Exhibit 101 - Mark A. Rex Statement; Exhibit 102 - Affidavit and Complaint for Search Warrant (1992 red Cadillac Deville); Exhibit 103 - Affidavit and Complaint for Search Warrant (1984 yellow Cadillac El Dorado); Exhibit 104 - Affidavit and Application for Search Warrant (6613 South 139th Circle); Exhibit 105 - SCSO Incident Report; Exhibit 106 - Lincoln Police Additional Case Information report (ACI#12); Exhibit 107 - Lincoln Police Additional Case Information report (ACI#16); Exhibit 108 - Affidavit of Evelyn M.A. Yah; Exhibit 109 - Affidavit of David R. Stickman; and Exhibit 110 - Mitchell notes. A transcript of the hearings (TR.) was prepared and filed on July 29, 2005 (Filing Nos. 66 and 67). Post-hearing submissions were made on August 2, 2005 (Filing No. 71). The

---

[2] At the beginning of the evidentiary hearing on July 13, 2005, Cotton withdrew that part of the motion to suppress seeking to suppress Cotton's statements made after his arrest on February 5, 2005 (TR. 21-22).

government conceded Cotton was entitled to some relief on the motion to sever in a letter to the court, dated July 21, 2005 (Exhibit 6). The parties were given until August 12, 2005, in which to submit any memoranda on the motion to sever (TR. 11).

At the hearing on July 13, 2005, the government's counsel, Mr. Franklin, was unprepared to proceed on that part of Cotton's motion relating to the traffic stop on December 6, 2005 (Paragraph 13 of Cotton's motion to suppress - Filing No. 49 [Sealed]) (TR. 127). The hearing was continued to July 26, 2005. On July 26, 2005, Mr. Franklin failed to appear for the hearing. The court was briefly recessed while Assistant U.S. Attorney Douglas R. Semisch appeared for the government. The government did not have any further witnesses available, and the undersigned magistrate judge deemed the motion to be conceded by the government as to the traffic stop (TR. 136-137). Therefore, the Court finds any evidence immediately seized from Cotton or his vehicle as a result of a traffic stop by the OPD near 30th and Sprague Streets in Omaha, Nebraska, on or about December 6, 2004, should be suppressed.

## FINDINGS OF FACT

On November 19, 2004, Deputy Voss prepared an affidavit for a search warrant for a 1992 red Cadillac De Ville which was located in the Omaha Impound Lot (TR. 77). Deputy Voss was investigating the theft of a diamond ring obtained by means of a fraudulent check by a Michael Jenkins (Jenkins) (TR. 78). Jenkins and another suspect, Rachel Jensen (Jensen), provided information to Deputy Voss about Cotton's involvement in the scheme (Exhibit 105). Deputy Voss sought to search a Cadillac for a typewriter which may have been used in preparing fraudulent documents. The typewriter was to have been carried in the trunk of the Cadillac which was driven by Jenkins at the time of his arrest (Exhibit 105). The Cadillac was owned by Eveyln M.A. Yah, the wife of Cotton (Exhibit 105). The warrant was issued and the Cadillac was searched (Exhibit 105). An identification card for M.A. Yah was found in the vehicle (Exhibit 105).

On December 9, 2004, Deputy Voss prepared an affidavit for a search warrant for a 1984 yellow Cadillac El Dorado which was located in the Omaha Impound Lot (TR. 83).

Deputy Voss sought to search this Cadillac for forgery equipment relating to the same scheme involving Jenkins (Exhibit 103). The Cadillac had been impounded after Cotton was arrested for driving the vehicle with no license plates on December 6, 2004 (Exhibit 103). Based on the previous information provided by Jenkins and information from Jensen, Sergeant Voss obtained a search warrant for the Cadillac (Exhibit 103). Various items were seized from the Cadillac including from the trunk (Exhibit 103).

In late 2004, Inspector Mitchell began an investigation of Allen Cotton and various fraudulent activities (TR. 29). After initiating his investigation, Inspector Mitchell requested and received the assistance of Agent Albers due to the fraudulent use of various Social Security numbers (TR. 106). On February 3, 2005, Inspector Mitchell and Agent Albers interviewed Rex at the Lincoln Police Department (LPD), in Lincoln, Nebraska, after Rex's arrest by the LPD (TR. 23). Rex provided information to Inspector Mitchell and Agent Albers concerning a scheme whereby several individuals open bank accounts using false identification documents and Social Security numbers not assigned to them and cashing checks drawn of those accounts (TR. 52). Rex identified Cotton and Brooks as involved in the scheme (TR. 52). Rex informed the agents that he had been to Cotton's garage where Rex had seen computers and guns (TR. 54).

The interview with Rex was taped by LPD since it took place in one of the LPD interview rooms (TR. 124). Inspector Mitchell and Agent Albers did not control the taping nor did they prepare any transcript of the session (TR. 124). The transcript (Exhibit 101) was prepared by LPD (TR. 124). However, Inspector Mitchell and Agent Albers took extensive personal notes (Exhibits 1 and 110). Due to the length of the interview, the tape ran out and the LPD had to switch tapes, unbeknownst to the agents. By the time LPD had switched to a new tape, there was an extensive gap in the interview on the tape. Consequently, a part of the interview was not recorded or included in the transcript (TR. 48; 114). Cotton's counsel was provided a copy of the transcript but not the agents' notes in the discovery materials. This gap in the interview prompted Cotton's counsel to file the motion for a ***Franks*** hearing due to the discrepancy in the information in the transcript and the information contained in the search warrant affidavit. Had government's counsel timely and adequately responded to the motion,

4

this discrepancy would have been discovered and the bulk of the evidentiary hearing would probably have been obviated.

Rex also accompanied the agents to Omaha and pointed out Cotton's residence (TR. 55). After consultation with the U.S. Attorney's office, the agents decided to obtain a search warrant for the residence and the assistance of an OPD S.W.A.T. team due to the weapons allegedly present (TR. 56). Inspector Mitchell and Agent Albers contacted Officer Miller with OPD for assistance. Officer Miller, using information provided by Inspector Mitchell and Agent Albers, prepared an affidavit (Exhibit 104) for a search warrant for the residence at Cotton's residence at 6613 South 139th Circle in Omaha (TR. 95-96). Officer Miller requested and Douglas Count Judge Schwartz authorized a no-knock search warrant based upon Rex's statements about the firearms which he observed and Cotton's prior record as a fugitive from justice for two counts of robbery (Exhibit 104). The warrant was served in a no-knock fashion on February 4, 2005, and numerous items of evidence were seized (TR. 96; Exhibit 104).

## LEGAL ANALYSIS

### Motion to Sever (Filing No. 46)

The motion to sever (Filing No. 46) is now moot as all of Cotton's co-defendants have subsequently enter pleas of guilty to various aspects of the Indictment and a joint trial is no longer at hand. Accordingly, the motion to sever (Filing No. 46) is denied as moot.

### Motion to Suppress (Filing No. 49 - Sealed)

Cotton seeks the suppression of evidence on the basis of allegedly intentionally false or misleading statements by the affiants in the various affidavits for search warrants under *Franks v. Delaware*. The court concludes that no intentional false or misleading statements were made by the affiants. The information used in the search warrant affidavits was accurate as known by Deputy Voss, Officer Miller, Inspector Mitchell, and Agent Albers. The information Deputy Voss used in his affidavits came from his investigation and statements from Jenkins and Jensen. His characterization of the information was fair and reasonable under the circumstances. There is no evidence that Deputy Voss intentionally misled the

issuing judge or provided false information regarding the information in the affidavits for the warrants for the two Cadillacs.   Likewise, Officer Miller utilized the information from the investigation conducted by Inspector Mitchell and Agent Albers in obtaining the search warrant for Cotton's residence.  There is no evidence that Officer Miller intentionally misled or provided false information to the issuing judge in obtaining this search warrant.   Accordingly, the search warrants in issue must be judged by the "four corners of the documents."

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, *Search and Seizure*, § 3.7(d) at 372 (3d ed. 1996).  As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983):  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*  Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit.  **See** *id.*; *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999).

> The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . .  Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched.

*United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996);  **see** *Gates*, 462 U.S. at 238.

The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* [*Gates*, 462 at 238]  When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in

6

> determining the existence of probable cause." ***United States v. Leichtling***, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201, 103 S. Ct. 1184, 75 L. Ed. 2d 431 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** ***United States v. Cadwell***, 864 F.2d 71, 74 (8th Cir. 1988), **citing *United States v. Ventresca***, 380 U.S. 102, 108, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965). "Deference is accorded an issuing magistrate's probable cause determination . . ." ***United States v. Brown***, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910, 99 S. Ct. 1220, 59 L. Ed. 2d 458 (1979).

***United States v. Gladney***, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added); **see also**: ***United States v. Spinosa***, 982 F.2d 620 (1st Cir. 1992) ("The affidavit must be 'viewed in its entirety,' and 'must be given a common-sense and realistic, rather than a hyper technical interpretation.'").

The affidavits for the search warrants are each sufficient in their statements of probable cause for finding evidence of the fraudulent schemes described. The motion to suppress should be denied as to each of the warrants.

Even assuming *arguendo*, that probable cause was lacking in sufficiency as Cotton suggests, the ***Leon*** good faith exception would allow the admissibility of the evidence seized. **See *United States v. Leon***, 468 U.S. 897 (1984). In ***Leon***, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" ***United States v. LaMorie***, 100 F.3d 547, 555 (8th Cir. 1996). There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

***Id.*** (citations omitted). However, none of those exceptions is present in this case.

7

Further, Cotton's assertion of a violation of his Fourth Amendment rights as to the search of the red Cadillac is suspect.  He has not established standing in such a vehicle.  The red Cadillac was being driven by Jenkins at the time of his arrest and purportedly belonged to Cotton's wife according to the affidavit for the search warrant.  No other evidence of standing by Cotton himself was presented.  To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998).  The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); see also *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979).  "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally."  *United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).  "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched."  *Id.* at 256.  The Eighth Circuit has recognized that:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized.  A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*Id.* (citations omitted).  "Because Fourth Amendment rights are personal and may not be asserted vicariously, we must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized."  *Gomez*, 16 F.3d at 256 (internal citations omitted).  Cotton has not established such in the red Cadillac.  Accordingly, his motion to suppress items from the red Cadillac should be denied on this basis alone.

As to Cotton's claim that items were inappropriately seized in the execution of the warrants, the Eighth Circuit "has applied a standard of 'practical accuracy' in determining whether a description is sufficiently precise to satisfy the requirements of the Fourth

8

Amendment, recognizing that the degree of specificity required necessarily depends upon the circumstances of each particular case." *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985). The language of the warrant need not be hyper-technical but should be sufficiently definite to enable the searcher to reasonably ascertain what is authorized to be seized. *United States v. Mosby*, 101 F.3d 1278, 1281 (8th Cir. 1996), **cert. denied**, 117 S. Ct. 2415 (1997); *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996); *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988). The degree of specificity is flexible and dependent upon the circumstances of a particular case. *United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978). In dealing with a white collar or fraudulent scheme crime, the Supreme Court has recognized that an assembly of a paper puzzle of seemingly innocuous pieces of paper is often required in a fraud crime. *Andresen v. Maryland*, 427 U.S. 463, 481 n.10 (1976).

When the items seized have a nexus to the criminal behavior charged, an officer may seize evidence of the crime even though it is not particularly described in the search warrant as long as the officer has a good faith belief that the objects or documents discovered are reasonably related to the offense in question. *United States v. Kane*, 450 F.2d 77, 85 (5th Cir. 1971), **cert. denied**, 405 U.S. 934 (1972). Even assuming, *arguendo*, that some items were seized outside of the scope of the warrant, the exclusionary rule does not require the suppression of evidence within the scope of the warrant simply because other items were taken as well. *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982); *United States v. Daniels*, 549 F.2d 665, 668 (9th Cir. 1977). The court does not find the actions of the searching officers to be in flagrant disregard of the warrant. The Supreme Court has distinguished between cases involving unauthorized searches and excessive searches and has determined there is no requirement to suppress all items seized when there is no flagrant disregard of the warrant. *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984); *United States v. Falon*, 959 F.2d 1143, 1149 (1st Cir. 1992).

The court finds the search warrants were properly executed and all items seized thereby are admissible in evidence.

**IT IS ORDERED** that Cotton's motion to sever (Filing No. 46) is denied as moot.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Cotton's motion to suppress (Filing No. 49 - Sealed) be DENIED as to the searches of the red Cadillac, the yellow Cadillac and the residence at 6613 South 139th Circle in Omaha, Nebraska, but GRANTED as to any evidence immediately seized from Cotton or his vehicle as a result of a traffic stop by the OPD near 30th and Sprague Streets in Omaha, Nebraska, on or about December 6, 2004 (Paragraph 13 of Cotton's motion).

## ADMONITION

Pursuant to NECrimR 57.2 and 57.3 any appeal of this Order or objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Order and Report and Recommendation. Failure to timely appeal or object may constitute a waiver of any such appeal or objection. The brief in support of any appeal or objection shall be filed at the time of filing such appeal or objection. Failure to file a brief in support of any appeal or objection may be deemed an abandonment of the appeal or objection.

Dated this 17th day of October, 2005.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge