IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:05CR116 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| ALLEN COTTON, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 97) issued by Magistrate Judge Thomas D. Thalken recommending denial of the motion to suppress filed by the Defendant, Allen Cotton (Filing No. 49). Cotton filed a statement of objections to the Report and Recommendation and a supporting brief (Filing Nos. 101, 102) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Cotton seeks an order suppressing: evidence seized as a result of the execution of three search warrants; evidence seized from a vehicle after a traffic stop; and statements made after his arrest.

Following an evidentiary hearing, Judge Thalken issued a Report and Recommendation in which he concluded: the motion filed pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978), should be denied as the evidence does not show that officers intentionally provided false or misleading information to the judges who issued the search warrants; the search warrant affidavits include sufficient probable cause to support issuance of the search warrants; even if probable cause were lacking, the *Leon* good-faith exception applies; Cotton did not establish standing to the red Cadillac; the items seized during execution of the search warrants fell within the language of the warrants describing

evidence to be seized; and evidence immediately seized from Cotton or his vehicle after a December 6, 2004, traffic stop should be suppressed. On the basis of these determinations, Judge Thalken recommended that the Defendant's motion to suppress be denied as to the searches of the red Cadillac, the yellow Cadillac, and the residence described in the motion and Report and Recommendation, but granted as to any evidence seized from Cotton or his vehicle as a result of the traffic stop near 30th and Sprague Streets in Omaha, Nebraska on or about December 6, 2004.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed account of the events surrounding the events relevant to the Defendant's speedy trial calculation. The Court has considered the transcripts of the hearings conducted by the Magistrate Judge (Filing Nos. 66, 67). The Court also carefully viewed the evidence. (Filing No. 62). Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Thalken's factual findings in their entirety.

**FACTUAL BACKGROUND**

As part of an investigation relating to the theft of a diamond ring obtained by Michael Jenkins with a fraudulent check, Jenkins and another suspect, Rachel Jenkins, gave information to Deputy Voss about Cotton's involvement in the scheme. Voss obtained a search warrant for a 1992 red Cadillac Deville registered to Evelyn M.A. Yah (wife of Cotton, a/k/a Mayah Mayah), seeking to find forgery equipment, including a typewriter and forged checks used in the scheme. (Ex. 102.) Voss also obtained a search warrant for a 1984 yellow Cadillac El Dorado located in the Omaha, Nebraska impound lot, seeking to find forgery equipment or any evidence pertaining to the fraud investigation. (Ex. 103.)

Postal Inspector Perry Mitchell, together with Special Agent Jason Albers, began investigating Cotton and others with respect to alleged fraudulent activities that included possible fraudulent use of social security numbers. Mitchell and Albers interviewed Mark Rex, who identified Cotton (known to Rex as Thomas Brooks) and Clinton Brooks as individuals involved in a scheme involving false identification documents, social security numbers and related fraudulent activity, including bank fraud. Rex told Mitchell and Albers that when he had been in Cotton's garage he saw computers and guns.[1] Rex also showed the agents Cotton's residence. Agents obtained a search warrant for the residence. The warrant included a no-knock provision due to Rex's information that guns might have been

---

[1] Judge Thalken described technical events surrounding the taping of the interview. (Filing No. 97, at 4.) The end result was a gap in the tape and therefore in the transcript of the interview. The "missing" information from the transcript prompted defense counsel to file a *Franks* motion because the information in the transcript of the interview differed from that contained in the search warrant affidavit. As Judge Thalken noted, had the government responded to the request for a *Franks* hearing, the *Franks* hearing would likely have been avoided.

present and Cotton's record as a fugitive in a case involving two robbery counts. The warrant was executed on February 4, 2005, and numerous items were seized as evidence.

## ANALYSIS

The Defendant objects to the following portions of Judge Thalken's Report and Recommendation:

1. Pages 5-7 - conclusion that the search warrants affidavits contained sufficient probable cause, more specifically arguing that officers omitted material facts and included false statements or intentional misrepresentations in the affidavits.

2. Page 7 - conclusions that, even if probable cause were found to be lacking, the *Leon* good-faith rule applies, and none of the exceptions to the good-faith rule apply.

3. Page 3 - the conclusion that only evidence "immediately" seized from Cotton or his yellow Cadillac after the traffic stop should be suppressed, arguing that *all* evidence seized from the yellow Cadillac should be suppressed as fruit of the poisonous tree.

4. Page 3 - the finding that the red Cadillac was only owned by Cotton's wife, Evelyn M.A. Yah, arguing that the evidence shows that Cotton and his wife are co-owners of the vehicle.

5. Page 8 - the conclusion that Cotton lacks standing to contest the search of the red Cadillac as he failed to show an expectation of privacy in the vehicle.

6. Page 4 - the finding that Rex identified Cotton as involved in the scheme, and that Rex told agents he had been to Cotton's garage.

7. Page 9 - the conclusion that the search warrants were properly executed and all items seized were therefore admissible in evidence because officers had a "good faith belief that the objects or documents discovered [were] reasonably related to the offense in question." Cotton argues that the "true test" is whether officers had "'*probable cause* to believe that the evidence sought will aid in a particular apprehension or conviction'" and that seized items, including a television and refrigerator, were beyond the scope of the search warrant. (Filing No. 101, at 4.)

8. Page 9 - the conclusion that even if items were seized outside the scope of the search warrant, there was no flagrant disregard of the warrant, arguing that all items seized should have been suppressed.

9. The failure to conclude that Cotton's Fourth Amendment rights were violated by the execution of the search warrant in a no-knock fashion, arguing that no evidence supported a suspicion of danger to the officers executing the warrant.

The objections are discussed below.

**DEFENDANT'S STANDING TO THE RED CADILLAC**

In order to establish standing to contest the search of the red Cadillac, Cotton must establish that he had a legitimate expectation of privacy in the vehicle. Specifically, Cotton must show: 1) a subjective expectation of privacy; and 2) "that this expectation is one that society is prepared to recognize as objectively reasonable." *United States v. Green,* 275

F.3d 694, 699 (8th Cir. 2001).  Relevant is any demonstrated ownership, possession or control of the vehicle searched or items seized.  *Id.*  To show standing in a vehicle, a defendant must present at least some evidence of a legitimate possessory interest or lawful control over the vehicle.  *United States v. Valdez Hocker,* 333 F.3d 1206, 1209 (10th Cir. 2003).

The Defendant met the threshold of introducing some evidence of a legitimate possessory interest and lawful control over the 1992 red Cadillac in presenting the testimony of Cotton's wife, Evelyn M.A. Yah, that the couple co-owned the vehicle.  (Tr. 61:13-19.)  Also, Jenkins told officers that Cotton owned the vehicle.  (Ex. 105, at 7.)  The search warrant reflects ownership only by Evelyn M.A. Yah.  (Ex. 102.)  The government does not object to standing.  The lack of objection to standing, together with the evidence presented leads the Court to conclude that Cotton has standing to object to the search of the 1992 red Cadillac, and the objection is granted.

**WHETHER REX IDENTIFIED COTTON DURING REX'S INTERVIEW**

As indicated by the government, the first videotape of Rex's interview includes Rex's statements that he knew Cotton as "Thomas Brooks," and that Rex knew the types of firearms possessed or owned by Cotton and where they were kept.  Rex also said he had been in Cotton's garage and had seen computer equipment and other incriminating evidence there.  (Ex. 2, beginning at 16h57min.)  The objection is denied.

**PROBABLE CAUSE - SEARCH WARRANT AFFIDAVITS**

*Red and Yellow Cadillacs*

*Franks* **Issue**

Cotton argues that, because Deputy Voss did not advise the issuing judge of inconsistent statements made by informants Michael Jenkins and Rachel Jenkins, the search warrant affidavits contained intentionally misleading information and also omitted information. Cotton also argues that probable cause did not support issuance of the search warrants.

A search warrant affidavit violates the Fourth Amendment if it contains "allegations of deliberate falsehood or of reckless disregard for the truth." *Franks v. Delaware,* 438 U.S. 154, 171 (1978). A presumption of validity exists with respect to the affidavit. *Id.* In order to prove a *Franks* violation with respect to false statements, a defendant must show: 1) the inclusion in the affidavit of a false statement made knowingly and intentionally, or with reckless disregard for the truth; and 2) once the false statement is excluded, the remaining content in the affidavit establishes probable cause. "[S]ubstantial deference" is given to the issuing judge's determination of probable cause, and the "totality of the circumstances" is considered in determining whether probable cause existed to support a search warrant. *United States v. Amburn,* 412 F.3d 909, 917 (8th Cir. 2005).

In order to prevail on a *Franks* claim involving alleged omissions of fact, a defendant must prove: 1) facts were omitted intentionally or in reckless disregard of the truth; and 2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *United States v. Stropes,* 387 F.3d 766, 771 (8th Cir. 2004).

When a search warrant affidavit includes information supplied by a confidential informant, an issuing judge should consider both: 1) the informant's reliability; and 2) the basis of the informant's knowledge, which may be shown by corroboration. Both factors need not be present. *United States v. Lucca,* 377 F.3d 927, 933 (8th Cir. 2004).

In the present case, the search warrant affidavits with respect to the vehicles do not state that the informants are reliable. However, as Voss testified, minor inconsistencies in Michael Jenkins' statements are outweighed by the corroboration provided by Rachel Jenkins' statements and vice versa. (Tr. 91:17-22.) Therefore, allowing deference to the issuing judges, the appropriate standard is satisfied despite the absence of a statement of reliability with respect to the informants. The Court concludes that the search warrant affidavits relating to the two vehicles include no intentional or reckless omissions, knowing or intentionally false statements, or statements made with reckless disregard for the truth.

**Probable Cause**

"To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched." *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir. 1998). "The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "'"Probable cause" to issue a search warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place.' . . . Courts should apply a common-sense approach and, considering all the relevant circumstances, determine whether probable cause exists." *United States v. Buchanan,* 167 F.3d 1207, 1211 (8th Cir. 1999) (quoting *United States v. Reivich,* 793 F.2d 957, 959 (8th Cir. 1986)). The probable cause determination may only

be made based on the information contained in the face of the affidavit. *See United States v. Jacobs,* 986 F.2d 1231, 1234 (8th Cir. 1993).

Probable cause exists "when the facts and circumstances within an officer's knowledge are sufficiently trustworthy to warrant a person of reasonable caution to believe that a crime has been committed and that seizable property from that crime may be located at a particular place or on a person to be searched." *United States v. Gipp,* 147 F.3d 680, 687 (8th Cir. 1998). Probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence. *United States v. Searcy,* 181 F.3d 975, 981 (8th Cir. 1999); *United States v. Edmiston,* 46 F.3d 786, 789 (8th Cir. 1995).

Substantial deference is given to an issuing judge's determination of probable cause. That determination should be upheld "unless the issuing judge lacked a substantial basis for concluding that probable cause existed." *Edmiston,* 46 F.3d at 788.

Viewing the search warrant affidavit with respect to the 1992 red Cadillac, the warrant describes the statement of Rachel Jenkins, who purchased a $6,800 diamond ring with a fraudulent check. Rachel Jenkins implicated Cotton and Michael Jenkins as other participants in the scheme. Michael Jenkins had been arrested in the red Cadillac. Rachel Jenkins indicated that there "may" be a typewriter in the trunk that was used by Cotton to produce fraudulent checks. (Ex. 102.) Clearly, these details meet the necessary standard for a finding of probable cause.

Turning to the search warrant for the 1984 yellow Cadillac, the affidavit set out similar information about the scheme. Cotton was arrested after a traffic stop; he was driving the yellow Cadillac. Clearly, these details meet the necessary standard for a finding of probable cause.

The objections with respect to the search warrants obtained for the vehicles are denied.

### *Residence*

Cotton argues that the search warrant, which was based on information provided by informant Mark Rex, omitted information and included false or intentionally misleading statements. Once the government provided additional discovery, it was clear that Rex referred to Cotton in the interview as "Thomas Brooks." Rex identified Cotton's photograph, explaining that he knew Cotton as Thomas Brooks. Rex said that he had been in Cotton's garage and saw computers and guns there. Rex then rode with agents and showed them Cotton's residence. (Tr. 52:11-53:5; 53:22-54:4; 55:20-23.)

The search warrant affidavit includes corroborating information. Specifically, the affidavit states that postal service records and the Douglas County, Nebraska Assessor's website confirmed that persons named "Cotton," "M.A. Yah," and "Evelyn Yah" receive mail at the address identified by Rex as Cotton's residence, and that M.A. Yah owns the residence. (Ex. 104.) Therefore, the appropriate standard is satisfied. Although the affidavit does not include a statement of reliability, the search warrant includes no intentional or reckless omissions, knowing or intentionally false statements, or statements made with reckless disregard for the truth.

With respect to probable cause, the search warrant affidavit includes details of the investigation including the traffic stop, investigators' findings, and information obtained from Rex's interview. Clearly, the appropriate standard for probable cause was met. The objection is denied.

**LEON GOOD-FAITH RULE**

With respect to all three search warrants, even if probable cause were lacking, the Court concludes that officers "relied in objectively reasonable good faith" on the search warrant. Therefore, the *Leon* good-faith exception to the exclusionary rule would apply, because the affidavits are not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Vinson,* 414 F.3d 924, 930 (8th Cir. 2005) (quoting *United States v. Leon,* 468 U.S. 897, 923 (1984)).

### SCOPE OF THE SEARCH WARRANT FOR THE RESIDENCE

The search warrant affidavit includes allegations of bank fraud involving checks. The affidavit also specifically states that fraudulent checks were "fraudulently used to purchase items totaling at least $7,800 at various merchants in the Omaha, NE area." (Ex. 104, at 2.) Therefore, large items seized such as a stainless steel television/refrigerator, a pop dispenser, and a 54" television fall within the scope of the search warrant. While such items were not specified in the search warrant, officers were justified in seizing such items in plain view because they were lawfully in a position to view such items and the items' incriminating nature was immediately apparent. *United States v. Khabeer,* 410 F.3d 477, 482 (8th Cir. 2005). The objection is denied.[2]

### NO-KNOCK SEARCH WARRANT

The search warrant affidavit provides the following justification for the request for a no-knock warrant:

---

[2] Cotton's argument that Judge Thalken misstated the appropriate test in determining whether an item falls within the scope of a search warrant is moot, as the items were legally seized pursuant to the plain view doctrine. Also moot is Cotton's argument that these items were seized in flagrant disregard of the search warrant.

11

> Mark Rex stated that Cotton always carries a .44 caliber Desert Eagle handgun on his side with two extra clips. On 12/27/83 Allen Cotton using the name of Alexander King was convicted of possession of illegal weapon short shotgun. On 8/23/84 Allen Cotton using the name of Alex Brooks was a fugitive from justice from Portland, Oregon for two counts of Robbery.

(Ex. 104, at 3.)

On this basis, a county court judge issued the no-knock warrant. (Ex. 104, at 6.)

The threshold for justifying a no-knock search warrant is not high and can be satisfied by evidence of a reasonable suspicion indicating a threat to officer safety or that the investigation would be inhibited. *United States v. Scroggins,* 361 F.3d 1075, 1081 (8th Cir. 2004); *United States v. Tyler,* 238 F.3d 1036, 1040 (8th Cir. 2001). In this case, the information provided in the search warrant and accompanying affidavit clearly satisfies the threshold. The objection is denied.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 97) is overruled insofar as the Magistrate Judge's conclusion that Cotton does not have standing to contest the search of the 1992 red Cadillac, and otherwise, the Report and Recommendation is adopted;

2. The Statement of Objections to the Report and Recommendation (Filing No. 101) is granted insofar as the Court determines that Cotton has standing to contest the search of the 1992 red Cadillac, and otherwise the Statement of Objections is overruled; and

3. The Defendant's Motion to Suppress (Filing No. 49) is denied.

DATED this 23rd day of November, 2005.

BY THE COURT:

                                            S/Laurie Smith Camp  
                                            United States District Judge